UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 12 CR 559 |
| | ) | |
| FREDERICK MAGSINO, and | ) | Judge John W. Darrah |
| MASOOD SYED | ) | |

**GOVERNMENT'S COMBINED RESPONSE TO
DEFENDANTS' PRETRIAL MOTIONS**

The United States of America, through its attorney, Gary S. Shapiro, respectfully

responds to the pretrial motions filed by defendants FREDERICK MAGSINO and

MASOOD SYED as follows:

**I.      Defendants' Motions for Immediate Disclosure of Favorable Evidence, Including
Evidence under *Brady*, *Giglio*, and the Jencks Act (Dkt. Nos. 153, 156, 158, and
161).**

Defendants MAGSINO and SYED request that this Court direct the government to

immediately turn over various materials pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

In an October 17, 2012 letter to defense counsel, the government acknowledged its ongoing

duty to disclose evidence favorable to defendants in this case pursuant to the trial rights of

*Brady* and stated that the government will produce any such evidence promptly, should it

come into the government's possession.  Courts have held that this acknowledgment alone

is a sufficient basis upon which to deny defendants' motions.  *See United States v. Sims*, 808

F. Supp. 607, 614 (N.D. Ill. 1992) (motion to produce *Brady* material denied as moot in light

of government's acknowledgment of awareness of its *Brady* obligations).

Moreover, the government takes seriously its discovery obligations. As such, the government has provided substantial discovery to defense counsel, beyond its required discovery obligations at this time, including recordings, reports of witnesses, bank records, patient files, telephone records, certain grand jury transcripts, and reports and data from TrustSolutions and Cahaba, in addition to making available to defense counsel evidence seized from the search of Rosner Home Healthcare, pursuant to a search warrant. At this time, the government is not aware of any evidence, which would fall within the purview of *Brady*.

The government also acknowledges its duty to produce *Giglio* and Jencks materials to defendants in this case.[1] Defendant MAGSINO has specifically asked for disclosure of *Giglio* material 14 days before trial, and defendant SYED has asked for a pretrial order related to disclosure of Jencks Act material. The government in its letter to defense counsel has agreed to disclose such available material 14 days before trial, which the government believes to be a reasonable time period so as not to prevent defendants from receiving a fair trial. *See Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir. 1986); *United States v. Hoover*, No. 95 CR 508, 1997 WL 80947, at *1 (N.D. Ill. Feb. 20, 1997) (assurances by the government

---

[1] The government need not produce *Giglio* material until trial, as long as defendants are not prevented from receiving a fair trial. *See Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir. 1986); *United States v. Marquez*, 686 F. Supp. 1354, 1357-58 (N.D. Ill. 1988). *Giglio* information requires little or no warning to be used effectively, and therefore need not be produced far in advance. *See United States v. Rinn*, 586 F.2d 113, 119 (9th Cir. 1978). To require otherwise would have the effect of giving defendants advance disclosure of the government's witness list, to which they are not entitled. *See United States v. Callahan*, 534 F.2d 763, 765 (7th Cir. 1976).

as it relates to *Giglio* and *Brady* disclosures are sufficient).[2]  In addition, the government has already produced to defendants evidence that fall under the purview of *Giglio* and the Jencks Act, including grand jury transcripts and statements, reports, proffer letters, and a letter agreement of immunity.  The government has identified certain cooperating individuals by pseudonyms at this time, and objects to the disclosure at this time of those cooperating witnesses' identities, which the government will address in more detail, in response to defendants' motions for the disclosure of the names of cooperating individuals.  The government similarly requests reciprocity in defendant's disclosure of *Brady*, *Giglio*, and Jencks Act material 14 days before trial.  The motions for evidence fitting under *Giglio* and the Jencks Act should be denied as moot.[3]

---

[2] The government's acknowledgment of its obligations under *Brady* and *Giglio* should not be interpreted as a stipulation to provide defendants with all of the materials requested in his motion.  Rather, the government will abide by the law in this Circuit and will provide defendants with all materials to which he is entitled.

[3]    The Jencks Act expressly provides:

In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the case.

18 U.S.C. § 3500(a).  In accordance with the unequivocal language of the statute, courts of this District have consistently recognized an absence of authority to compel pretrial disclosure of Jencks Act material.  *See United States v. Feinberg*, 502 F.2d 1180, 1182-83 (7th Cir. 1974); *Myrick*, 1997 WL 564673 at *2 ("District courts have no authority to compel pretrial disclosure of Jencks Act material."); *Balogun*, 971 F. Supp. at 1233 (finding government offer to provide Jencks Act materials three weeks prior to trial to be "quite reasonable, particularly since it exceeds the requirements of the Jencks Act"); *Sims*, 808 F. Supp. at 616.

## II.     Defendant MAGSINO's Motion for Notice of Intention to Use Expert Witnesses (Dkt. No. 151).

Defendant MAGSINO has requested that the government provide notice of its intention to use expert witnesses at trial, including the production of resumes or curriculum vitae, expert reports of any examinations or tests pursuant to Federal Rule of Evidence 16(a)(1)(F), and a written summary of the testimony that the government intends to use.  The government has no object to providing this notice three weeks before trial.  The government hereby requests that the defendants provide reciprocal discovery in advance of trial pursuant to Fed. R. Crim. P. 16(b) and 26.2(a).

In addition, in the letter to defense counsel from October 17, 2012, the government acknowledged its obligation to turn over this material in accordance with the requirements of Rule 16(a)(1)(F), and will do so promptly, should the government obtain such reports of examinations or tests.

## III.     Defendants' Motion for Production of 404(b) Material (Dkt. No. 155 and 157).

Defendants request that the Court order the government to disclose any evidence of other crimes, acts, or wrongs under Federal Rule of Evidence 404(b) well in advance of trial. In its letter dated October 17, 2012, the government agreed to notify defendants of evidence that it intends to use under Rule 404(b) three weeks before trial, which the government believes to be a reasonable time period to ensure that defendants have sufficient notice.  In addition, the government has provided to defense counsel all evidence that the government

currently has of defendants' criminal history. The government has no objection to notifying defendants of its intention to use evidence under Rule 404(b) three weeks before trial.

## IV. Defendants' Motion for Identification and Production of Confidential Informants (Dkt. No. 150 and 166).

Defendants MAGSINO and SYED have moved for an order requiring the government to identify confidential sources utilized in the investigation of this case. Defendants' motion should be denied.

The government acknowledges its obligations under *Rovario v. United States*, 353 U.S. 53 (1957) and *Giglio* to identify any cooperating informants that will testify as witnesses for the government in its case-in-chief and to provide requisite impeaching information regarding such witnesses. With regard to cooperating individuals who will testify as witnesses at trial, the government will formally provide defense counsel with the identity of, and general impeachment information pertaining to, such witnesses at the time the government makes its other Jencks Act and *Giglio* disclosures–no later than two weeks prior to trial in this case.

With regard to the remaining portion of defendants' motion, the "government has a limited privilege to withhold the identity of a confidential informant from a criminal defendant*." United States v. Jefferson*, 252 F.3d 937, 940 (7th Cir.2001) (*citing Rovario*, 353 U.S. at 60). The purpose of this privilege is to further and protect the public interest in efficient law enforcement by encouraging responsible citizens to cooperate with government officials. *See Rovario*, 353 U.S. at 59*; Dole v. Local 1942, Intern. Broth. of Elec. Workers,*

*AFL-CIO*, 870 F.2d 368, 372 (7th Cir. 1989). "The underlying concern of this doctrine is the common sense notion that individuals who offer their assistance to a government investigation may later be targeted for reprisal from those upset by the investigation." *United States v. Herrero*, 893 F.2d 1512, 1525 (7th Cir. 1990) (affirming district court's refusal to disclose identity of informant at detention hearing); *Andrus*, 775 F.2d at 842 (affirming refusal to disclose identity of informant at trial). When asserting the privilege the government is not required to show an actual threat in the particular case. *Valles*, 41 F.3d at 358.

In order to overcome the privilege, a defendant must "establish a genuine need for disclosure before disclosure should be ordered." *United States v. Andrus*, 775 F.2d 825, 842 (7th Cir. 1985); *United States v. Tucker*, 552 F.2d 202, 209 (7th Cir. 1977) (same); *see also Valles*, 41 F.3d at 358 (7th Cir. 1994) (defendant bears burden in face of an assumption that the privilege should apply); *United States v. Spears*, 965 F.2d 262, 273 (7th Cir. 1992) (burden is on the defendant to establish that informant is a material witness or crucial to the defense). The defendant, however, has the burden of establishing that disclosure is relevant and helpful to the defense or essential to the fair determination of a case. *See Jefferson*, 252 F.3d at 941.

Defendants in their motion have not met this burden of proof to establish that the disclosure of the confidential informants' identities and any contents of their communications that have not yet been disclosed are relevant and helpful to the defense of the accused. Specifically, there are four confidential informants, one of whom, Confidential Source 3, the

government has already disclosed to defense counsel his/her identity. With regard to all the confidential sources, the government has provided in discovery reports, two grand jury statements, and recordings with and related to the confidential sources. The government, however, for the safety and protection of the remaining three unidentified confidential sources, particularly given the small, tight-knit community of those who worked at Rosner Home Healthcare and those in the home healthcare community, has redacted the sources' names from such material.

To the extent that defendants seek disclosure of the identities of the three remaining confidential informants immediately, defendants identified as a basis only a general request to interview the informants, without any further argument specific to this case. *Herrero*, 893 F.2d at 1525 (defendant's must establish a "credible need for information"); *see also Myrick*, 1997 WL 564673 at *5 (rejecting "boiler-plate assertion" that disclosure of informants necessary "'to determine whether or not he or they should be called as defense witnesses'" and holding: "We will not revoke the privilege for the remaining informants, if any, on the basis of bare speculation that the information may prove useful to the defense.").

Given the failure of defendants to meet their burden of proof, balanced against the concerns for the confidential informants, the government requests that the Court deny the defendants' motions.

If any of the confidential informants in the present case testify at trial, then their identities and other information concerning their testimony will be disclosed in accordance

with all applicable rules. Defendant's motion to disclose their identities at this time should be denied.

## V. Defendants' Motions for the Preservation of Agents' Notes (Dkt. Nos. 154 and 160).

Defendants have requested that the Court enter an order requiring the government to preserve all notes, rough notes, logs and memoranda prepared by, or at the request of the government's agents and/or attorneys, as well as government witnesses. The government agrees that all agents involved in the case are to preserve their notes, provided that the "notes" are construed to be limited to drafts of agents' interviews or investigative reports. The government has directed agents to preserve their handwritten notes, to the extent they still exist, and has informed defense counsel of this instruction in its letter dated October 17, 2012.[4] To the extent the defendants seek preservation of handwritten notes by the government attorneys or defendant MAGSINO's broadly categorized "government witnesses," defendants cited no authority for such request of preservation, and the government objects to these requests. Further, any such production request for such material of government attorneys likely would be subject to various privileges, including attorney-

---

[4] The government's agreement to preserve agents' notes should not be misconstrued as an agreement to disclose or turn over such notes without a further showing by the defendant. Such handwritten notes or rough drafts prepared by agents that are subsequently transcribed and made part of a final report are not discoverable under the Jencks Act. In *United States v. Starnes*, 644 F.2d 673, 681 (7th Cir. 1981), the court stated that such notes were discoverable only if "the notes were a substantially verbatim transcript of the [witness'] remarks, or were his own written statement adopted or approved by him." *See* 8 U.S.C. § 3500(e)(1) and (2); *see also United States v. Harris*, 542 F.2d 1283, 1292-93 (7th Cir. 1976); *United States v. Consolidated Packaging Corp.*, 575 F.2d 117, 129 (7th Cir. 1978).

client privilege, work product privilege, deliberative process privilege, or law enforcement investigatory privilege, barring the disclosure of these materials to the defendant.

## VI.    Defendant SYED's Motion to Sever (Dkt. No. 152).

Defendant SYED has requested that his trial be severed from his codefendants, arguing erroneously that, based on the discovery, SYED has a different degree of culpability than the rest of the defendants.  According to SYED, the structure of the indictment puts at issue the jury's ability to make a "reliable judgment" regarding SYED's guilt or innocence.

The Federal Rules of Criminal Procedure plainly contemplate that multiple defendants may be tried together "if they are alleged to have participated . . . in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b).  Indeed, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003), *cert. denied sub. nom*, *Colon v. United States*, 540 U.S. 1201 (2004) (*quoting Zafiro v. United States*, 506 U.S. 534, 537 (1993)).  Joint trials "'promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro*, 506 U.S. at 537 (*quoting Richardson v. Marsh*, 481 U.S. 200, 209-10 (1987)).  Joint trials also reduce the burdens on the judiciary, prosecutors, and witnesses, they eliminate the extra expenses that are incurred in multiple trials, and they reduce the chance that each defendant will attempt to create reasonable doubt by blaming an absent codefendant.  *See United States v. Blassingame*, 197 F.3d 271, 286 (7th Cir. 1999).  Accordingly, in all but the "most unusual circumstances," the risk of prejudice

9

arising from a joint trial is "outweighed by the economies of a single trial in which all facets of the crime can be explored once and for all." *Id.*

However, "[i]f the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Nevertheless, Rule 14 does not require severance, even if prejudice is shown. Rather, the Rule leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion. *Zafiro*, 506 U.S. at 538-39. When defendants have been properly joined under Rule 8(b), "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. In order to obtain a separate trial, a defendant must demonstrate that the denial of severance will cause him "actual prejudice" that will deprive him of his right to a fair trial; it is insufficient that separate trials will give a defendant a better opportunity for an acquittal. *United States v. Rollins*, 301 F.3d 511, 518 (7th Cir.2002) (citations omitted); *see also Zafiro*, 506 U.S. at 540.

In this case, defendant has not alleged, nor could he, that joinder was improper. Thus, the decision as to whether to sever is within the sound discretion of the Court. Contrary to defendant's argument, given the substantial overlap between count one's conspiracy offense, and the counts in which SYED and the other defendants are charged,

the structure of the indictment, as well as judicial resources, in fact favor a joint trial. *See*

*Zafiro*, 506 U.S. at 537; *United States v. Vallone*, 698 F.3d 416, 486 (7th Cir. 2012).

Moreover, defendant SYED's argument that his specific role is smaller than other

codefendants charged is erroneous. Three of the nine defendants, as employees or owners

of Rosner Home Healthcare, are charged with conduct involving the illegal payments of

kickback payments in exchange for the referral of patients for home health services, paid

for by Medicare. Five of the charged defendants, including SYED and another doctor,

however, are each charged with two counts related to the illegal receipt of kickbacks in

exchange for the referral of patients to Rosner for home health services, paid for by

Medicare. An additional defendant, TITIS JACKSON, is charged in three counts with the

illegal receipt of kickbacks for patient referrals.

Significantly, according to the discovery disclosed to defense counsel, evidence

shows that several codefendants, in exchange for payments, have illegally referred and

attempted to refer patients less times than SYED, and several codefendants have illegally

referred and attempted to refer patients more times than SYED, putting SYED's role in

the offense in the middle of the range of the defendants charged. Specifically, evidence

provided to defense counsel showed that SYED attempted to refer and referred patients

for admission to home health services and re-admission to home services approximately

67 times since approximately July 2008.

Defendant's concern that the jury will not be able to make a reliable judgment

regarding SYED's guilt or innocence should be cured through the use of the standard jury

11

instruction, instructing the jury to consider each defendant and the evidence against that defendant independently. A jury is presumed to follow the instructions given. *See United States v. Hollnagel*, No. 10 CR 195, 2011 WL 3471081, *8 (N.D. Ill. Aug. 5, 2011). The Court may also give limiting instructions when requested and where appropriate, where certain evidence is admissible for a limited purpose. *Id*.

Given that the concerns of defendant SYED may be addressed through less burdensome measures than severance, the government respectfully requests that defendant SYED's motion for severance be denied.

## VII. Defendant SYED's Motion for Early Return of Trial Subpoenas (Dkt. No. 159)

Defendant SYED has moved for the early return of trial subpoenas. The government has no objection, so long as it applies with reciprocity to the government.

**<u>Conclusion</u>**

The government requests defendants' motions, Docket Numbers 150, 153, 156, 158, 161, and 166, be denied for the reasons stated above, defendants' motions, Docket Docket Numbers 151, 154, 155, 157, 159, and 160, be granted with the government's specified limitations regarding deadlines, definitions, and reciprocity.


Respectfully submitted.
GARY S. SHAPIRO
United States Attorney


By: <u>/s/ Halley B. Guren</u>
HALLEY B. GUREN
Assistant United States Attorney
219 South Dearborn Street
Fifth Floor
Chicago, Illinois 60604
(312) 886-4156

Date: February 5, 2013